## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01197-SCT

*EVELYN LINDSEY*

*v.*

*RALPH D. LINDSEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/1998 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEN MELVIN |
| ATTORNEY FOR APPELLEE: | ROBERT R. MARSHALL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/28/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/18/99 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### STATEMENT OF THE FACTS AND CASE

¶1. Ralph D. and Evelyn Lindsey were married in 1981. One child, Desiree Nichole, was born of the marriage. At the time of marriage, Ralph owned a home which he had purchased five years earlier for $11,500. The house was purchased with a fifteen-year mortgage, and Ralph alone made the payments during the first five years of the mortgage. Shortly after the marriage, Ralph deeded the home to himself and his wife, and the couple spent $7,000 on additions to the house during the course of the marriage. Evelyn worked during most of the marriage, and she also contributed to the household work and the rearing of the couple's daughter, Desiree N. Lindsey, born February 3, 1983.

¶2. Ralph and Evelyn separated in 1996, and on June 29, 1998, the couple was divorced on grounds of irreconcilable differences. The couple worked out an informal property settlement agreement pursuant to which Evelyn took most of the couple's household furnishings and a car in exchange for quitclaiming her interest in the house back to Ralph. At a property division hearing, the Chancellor denied Evelyn's request for alimony, but he awarded her an equitable share in the house in the amount of $ 5,915. Feeling aggrieved as to the Chancellor's equitable division of the marital property, Evelyn timely appealed to this Court.

### ISSUE

**Whether the trial court was manifestly in error and applied an erroneous legal standard in the division of marital property so that his decision should be reversed.**

¶3. The sole issue in the present appeal relates to the Chancellor's decision to award Evelyn a lien of $ 5, 915 on the couple's house. In equitably dividing the couple's house, the Chancellor expressly (and properly) relied on this Court's decision in ***Ferguson v. Ferguson***, 639 So.2d 921 (Miss. 1994). In ***Ferguson***, this Court set forth the following factors for a Chancellor to consider in equitably dividing marital property:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
> a. Direct or indirect economic contribution to the acquisition of the property;
>
> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>
> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3. The market value and the emotional value of the assets subject to distribution.
>
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
>
> 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
>
> 8. Any other factor which in equity should be considered.

***Ferguson***, 639 So.2d at 928. With regard to the first ***Ferguson*** factor, the Chancellor noted that Ralph had originally purchased the house in 1976 and that he alone made the mortgage payments during the initial five years of the fifteen-year mortgage. The Chancellor also found that, during the period of the marriage, Ralph had an average annual gross income of $ 24,500, while Evelyn's average annual gross income was only $ 6,000. The Chancellor further noted that Evelyn had not worked during seven of the twenty-two years of the marriage, and he considered these factors significant in determining the parties' respective economic contributions for equitable distribution purposes.

¶4. With regard to the second ***Ferguson*** factor, the Chancellor found that, at the time of the couple's separation in 1996, Evelyn had taken most of the family's household furnishings pursuant to an informal property division. The parties had agreed that Evelyn would take most of the household furnishings in exchange for Evelyn's conveying her one-half interest in the house to Ralph. Evelyn testified that she took

"the car, the 1987 Ford Taurus, and I took some furniture. I took two couches, two chairs, a recliner, my daughter's bedroom set, my son's bed, television, the table and chairs, and some other odds and ends." Evelyn testified that she left Ralph a king-size bed, a recliner, a television, various pots and pans, as well as one non-operational automobile and a truck in working order.

¶5. The Chancellor indicated in his ruling that he would not disturb this *de facto* property settlement as it related to the household furnishings, but he refused to recognize Ralph's claimed ownership of the entire house. Instead, the Chancellor elected to treat the house as marital property, valued at $26,690, and he awarded Evelyn a one-fifth interest in the house. Neither party has contested the Chancellor's finding that the house constitutes marital property, and this issue is accordingly not before this Court on appeal. Nevertheless, it is apparent that, under *Ferguson*, the Chancellor properly considered Evelyn's retention of most of the couple's household furnishings in equitably distributing the remaining property, including the house.

¶6. This Court's decision in *Ferguson* also lists as a pertinent factor the "needs of the parties for financial security with due regard to the combination of assets, income and earning capacity."[1] In this regard, the Chancellor noted that Ralph is disabled by health problems, including degenerative disk disease, degenerative arthritis of neck and back, bone spurs on his spine, and high blood pressure, and that he was accordingly "unable to earn other income." Based primarily on these considerations, the Chancellor concluded that Evelyn was entitled to an equitable share of the house in the amount of $ 5,915. Evelyn argues that the Chancellor abused his discretion in this regard, but this Court concludes that the Chancellor's ruling was supported by substantial evidence and does not constitute an abuse of discretion.

¶7. The Chancellor's ruling is clearly supported by the fact that Ralph purchased the house himself five years before the couple was married and made the mortgage payments alone during this time. Evelyn acknowledges these payments, but asserts that "any payments made in this time would most likely be interest." Given that the house was purchased with a fifteen-year mortgage, however, it is apparent that the payments during these first five years constituted a significant portion of the principal amount of the loan. Evelyn notes that her brother, who is a carpenter, assisted in the building of an addition to the house, but Ralph testified that he paid for the materials used in building the addition.

¶8. Evelyn argues that the Chancellor did not expressly consider each of the *Ferguson* factors, but it is nevertheless apparent that the Chancellor did consider the most pertinent[2] *Ferguson* factors, as discussed *supra.* The record indicates that the Chancellor carefully considered the testimony of the parties in light of *Ferguson*, and, while this Court might not have arrived at the same decision in the present case, there is no basis for finding an abuse of discretion under the facts herein. The judgment of the Forrest County Chancery Court is affirmed.

¶9. **AFFIRMED.**

> **BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J. SULLIVAN, P.J., NOT PARTICIPATING.**
>
> COBB, JUSTICE, DISSENTING:

¶10. I respectfully dissent. First, the total award of only $5,915 to the wife, in the form of an equitable lien

on the marital home, falls far short of an equitable distribution of the marital assets. Second, the chancellor failed to give any consideration whatsoever to the value of the husband's vested pension in his analysis and calculation of the division of assets.

¶11. Three issues were submitted by the parties for the trial court's determination, one being equitable division of the marital assets. The others being alimony and provision for medical and dental expenses of the minor child. As to the latter two, the court denied alimony and required Mrs. Lindsey to keep health insurance for the child through her employment.[3] The court correctly found that the marital assets were very sparse, which actually makes the proper calculation of the division even more critical, because every penny counts. The court found that the primary asset was the marital domicile of the parties. The home was purchased by the husband in 1976 for $11,500, and its value at the time of divorce was $26,000. The husband had owned it for 5 years prior to the marriage, having made a down payment of $1,000 and monthly payments on a 15-year mortgage. The parties lived together in the marital home for 15 years until the date of separation, which was 2 years prior to the final judgment of divorce. The chancellor looked at the relative incomes of the parties during the 15 years and found that Mrs. Lindsey contributed 20% and Mr. Lindsey contributed 80%. He further acknowledged that "she made the contribution that wives ordinarily make to a household, and to the maintenance of a household, and to the attendance to the needs of the members of the family in the household." As he calculated the allocation of value, the chancellor noted that of the 22 years of total ownership of the home, only 15 of which he allocated to Mrs. Lindsey.[4] The chancellor did not state specific dollar figures as he explained how he arrived at the $5,915 which he determined to be Mrs. Lindsey's share, but he did mention specific items which he took into account. By applying liberal and generous credit to Mr. Lindsey for his "extra" contributions ($1,000 down payment, estimated $2,500 for the principal payments he made prior to the marriage, and $3,500 for half of the cost of improvements made on the home during the marriage) then subtracting this total of $7,000 "extras" from the $26,000 value, one arrives at approximately $19,000 as the amount to be equitably divided. Thus the $5,915 awarded to Mrs. Lindsey would be only 31% of the adjusted value. And Mr. Lindsey gets full ownership and possession of the home which is no longer encumbered by a mortgage. If the $5,915 had been in the form of a lump sum payment (which would have been impractical given Mr. Lindsey's financial situation), or even small monthly payments (which would appear to be quite feasible based on his guaranteed income from Social Security), it might have been more equitable. But it is only a lien, the benefit of which she may never receive, presuming Mr. Lindsey continues to live in the paid-for-in-full home for the rest of his life. Thus Mrs. Lindsey leaves a 17-year marriage, following a divorce which was initially filed against her by her husband, having no money in hand and no assets other than some old household furnishings and an old car. And at 51 years of age she is beginning in a new career as a certified nurses' aide making little above minimum wage. This hardly seems equitable.

¶12. The second, and more serious, flaw in the chancellor's distribution of the marital assets is his failure to consider at all whether Mrs. Lindsey is entitled to a share of Mr. Lindsey's vested pension from the Hercules Company. Mr. Lindsey worked at Hercules for 19 years, of which 12 were during the marriage. Although Mrs. Lindsey did not contribute directly to this pension, she did so indirectly. In *Parker v. Parker*, 641 So. 2d 1133 (Miss. 1994), this Court affirmed the trial judge's award to the wife of an equitable interest in the husband's profit-sharing plan, where the chancellor fully analyzed the facts and found that the award should be made, given the length of the marriage and the fact that the wife contributed to the marital assets and, indirectly, to her husband's profit sharing plan which was his pension plan. Finding that "[the husband's] quality work for his employer, which resulted in job security and a vested pension, is, in

part, a result of [wife's] efforts. She worked both in and outside the home, providing income for the family and helping create a stable home life for the . . . family." *Id*. at 1138.

¶13. Although neither party raised the pension as a specific issue, and the chancellor did not address it at all in his calculation of the "equitable division of marital assets" requested by Mr. and Mrs. Lindsey, it certainly comes well within the general assignment of error which brings this matter before this Court,[(5)] and equity would require that it be considered.

¶14. Mr. Lindsey receives a pension of $507 per month from Hercules, which he will receive until his death. At the time of the divorce, his monthly income was $1,547 ($1,040 from Social Security disability and $507 in pension income from Hercules). This is, in effect, "guaranteed" income because it comes from Social Security disability (which has COLA increases) and from a pension that pays until death. The fact that he lives in the debt-free marital home makes his financial position even healthier. And it appears from the record that his income will increase somewhat in a few years when the minor daughter reaches the age at which she no longer receives the $530 Social Security child's payment. There was no testimony that his disability was one which required any extraordinary expenditures, nor that it would become severe enough to require large expenses in the future. On the other hand, Mrs. Lindsey's income is not "guaranteed" by any means. At the time of the divorce, she made $1,053 per month, based on a $6.00 per hour wage as a certified nurses' aide. She is 51 years of age and basically has no security to which she can look forward. Although it was not addressed in much detail, when deciding that Mrs. Lindsey was not entitled to alimony, the chancellor implied that he felt she was in a better relative position than Mr. Lindsey. I would disagree, based on the facts stated above. Given the rather dire financial situation in which Mrs. Lindsey finds herself following the trial court's decision, it is important to note that even a small increase in the amount awarded her would make a big difference in her life. We should be careful not to equate "manifest error" with "a big difference in the amount of money awarded."

¶15. I believe there was manifest error and would reverse the trial court and remand this case for further consideration of the entire equitable distribution issue, with special attention to the matters set forth above.

## PITTMAN, P.J., JOINS THIS OPINION.

1. Ralph's monthly income from sources of disability social security and pension/retirement totaled $1,454.75. His social security disability payments provided a $260 monthly check to Desiree and an additional similar check to a child of a prior marriage. The child of a prior marriage was nearing majority when that check would terminate and Desiree's portion would increase. Ralph's monthly living expenses were estimated to be $1,992.35.

According to Evelyn's financial disclosure, she earned $1,053.12 monthly and received a $530 social security check, with expenses of $1,381.00. She also had a child from a prior marriage. The chancellor found no justification for alimony and denied Evelyn's request for alimony. There is no issue raised as to this finding; however, it relates to income, assets and earning capacity.

2. This Court finds these factors to be the most pertinent within the context of the present case; not as a general matter.

3. A payment of $530 per month is received for the minor child from the Social Security Administration, because she is the minor child of a recipient of Social Security Disability. Although it is not clearly spelled

out in the chancellor's opinion, apparently he intended that Mrs. Lindsey would pay for the insurance and any other medical and dental expenses from this $530. It should also be noted that in the majority's analysis of the "needs of the parties for financial security" (Majority Opinion at 4-5) this $530 is shown as social security income to Mrs. Lindsey, although it actually is the child's support benefit.

4. The actual length of the marriage from inception to divorce is 17 years, although the separation occurred after 15 years. This Court continues to hold that the obligations and benefits of marriage continue until divorce, and do not end when one party separates from the union.

5. "Whether the Chancellor was Manifestly in Error and Applied an Erroneous Legal Standard in the Division of Marital Property so that his Decision Should Be Reversed."